UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTOINETTE M. MURRAY,<br><br>    Plaintiff,<br><br>v.<br><br>PSEG,<br><br>    Defendant. | 11-CV-481-WJM<br><br><br>MEMORANDUM<br>OPINION & ORDER |

      This matter comes before the Court on Plaintiff Antoinette Murray's motion for appointment of *pro bono* counsel under 28 U.S.C. § 1915(e)(1). For the reasons stated below, the Court will deny the application.

      Ms. Murray is suing to obtain her deceased husband's pension. She alleges that her husband, John Murray, was an employee of Public Service Electric and Gas Company ("PSEG") for thirty-three years and that he retired on February 28, 2001. After his retirement, he received a pension from PSEG's Pension Plan (the "Plan"). He passed away on August 28, 2009. Prior to his death, he allegedly expressed his desire that Ms. Murray be made the beneficiary of both his life insurance policy and his pension. Ms. Murray has attached to her complaint photocopies of two apparently notarized letters dated August 26, 2009 memorialize these wishes.

      Ms. Murray claims that the Plan has refused to assign to her any of her deceased husband's pension benefit.[1] On November 18, 2010, Ms. Murray, operating *pro se*, filed an action against the Plan in the Superior Court of New Jersey, Law Division, Passaic County, seeking to receive the pension benefits as well as seeking to recover additional damages for pain and suffering caused by the Plan's refusal to pay. On January 27, 2011, the Plan removed the action to this Court pursuant to 28 U.S.C. §§ 1441 and 1446, and thereafter filed an answer. Since that time, Ms. Murray has received numerous extensions of time to obtain counsel prior to completing discovery or proceeding further with the case. On August 1, 2011, Daniel Levy, esq., notified the Court by letter that he was reviewing Ms. Murray's case to determine whether or not he would formally

---

[1] Based on a letter she sent to this Court dated October 25, 2011, and received on December 6, 2011, Ms. Murray *has* received some benefit under her husband's life insurance policy.

1

appear on her behalf. Unfortunately for Ms. Murray, on August 10, 2011, Mr. Levy informed the Court that after having reviewed the case he was unable to enter an appearance in this matter. On October 6, 2011, Magistrate Judge Michael A. Hammer, entered a pretrial scheduling order ordering that all discovery be completed by February 6, 2012. On December 6, 2011, Murray sent a letter to Judge Hammer requesting that the Court appoint counsel to assist her in her lawsuit. She followed this up with a formal application for appointment of counsel on December 30, 2011.

      Section 1915(e)(1) provides that "[t]he court may request an attorney to represent any person unable to afford counsel." District courts have "broad discretion" to decide whether requesting counsel is appropriate, may request counsel at any point in the litigation, and may do so *sua sponte*. *Montgomery v. Pinchak*, 294 F.3d 492, 498 (3d Cir. 2002) (citing *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993)). As an initial matter, the Court must first determine if the party seeking counsel has an underlying case with arguable merit in fact and law. *Id*. at 498-99. Once the claim has passed that threshold, the Court then considers the following list of criteria to assess whether requesting counsel would be appropriate: (1) the plaintiff's ability to present his or her own case; (2) the difficulty of the particular legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue investigation; (4) the plaintiff's capacity to retain counsel on his or her own behalf; (5) the extent to which a case is likely to turn on credibility determinations; and (6) whether the case will require testimony from expert witnesses. *Id*. at 499. The list is non-exhaustive, and the Court may consider other facts or factors it determines are important or helpful. *Id.*

      While the Court is not unsympathetic to Ms. Murray's situation, her lawsuit appears to lack arguable merit. At this juncture, the merit of Ms. Murray's case apparently turns entirely on the precise legal nature of the Plan as determined by Mr. Murray's initial election: if her husband's pension is structured in such a way that she is entitled to benefits, then her claim has merit. If on the other hand her husband's pension is structure in such a way that no survivor benefits are available, then her claim will likely fail.  Ms. Murray has not provided much, if any, real documentation of the Plan. She attached one page of an apparently two-page document[2] entitled "Your Estimated Pension Benefit" as an exhibit to her complaint. The document, which appears to have been printed from an Internet webpage, suggests that there are three general pension configurations identified as "Single Life Annuity", "100% Joint and Survivor Annuity", and "50% Joint and Survivor Annuity" and further suggests that the amount of money that would inure

---

[2] The phrase "Page 1 of 2" appears in the upper right hand corner of this document.

to the participant's beneficiary would change depending on which configuration the participant chose. It would appear, based solely on this unidentified document, that if the participant chose the "Single Life Annuity" option, then he would receive higher monthly payments, but his beneficiary would receive no money after the participant's death. At the Court's request, PSEG provided the Court with copies of the Plan in effect at the time of Mr. Murray's retirement and at the time of his passing. Both documents apparently confirm that a single-life annuity provides payments for the lifetime of the participant only and will not continue to a survivor-beneficiary after death. The Plan, as it was in effect at the time of Mr. Murray's retirement, appears to provide that if a participant is not married at the time they receive their first pension benefit payment, the participant will automatically receive a single-life annuity, unless the participant elects otherwise. The Plan further appears to provide that a participant may not make such election after the latter of his retirement date or when his payments under the Plan begin. Thus, while the Court makes no final determination as to the legal significance of these documents and the facts of this case, it would appear that Mr. Murray received a single-life annuity, and thus – despite his wishes – was not legally able to direct any survivor benefits to Ms. Murray after his death. Nor was he able to change his initial election to one that would be transferrable.

For the foregoing reasons and for good cause shown;

**IT IS** on this 22nd day of February 2012, hereby,

**ORDERED** that Ms. Murray's application is **DENIED.** Ms. Murray may renew her application for *pro bono* counsel if discovery reveals additional evidence relevant to the Court's consideration of this matter. The Court also may *sua sponte* renew Ms. Murray's application as it deems appropriate as the matter proceeds.

    /s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**